OLSEN and others *v.* SCHOONER EDWIN POST, her tackle, etc.

*(District Court, D. Delaware.    March 18, 1881.)*

1. SEAMEN—WAGES.

    While it is true as a general rule that seamen will not be entitled to wages until the voyage is completed, there are exceptions to it, and among them is the case of a vessel employed to perform certain work or duties in a specified locality, and not engaged in carrying freight from port to port.

2. SAME—SAME.

    An agreement to pay them for six months' services on board the said vessel for wrecking purposes, although it may contain a proviso for its return to a specified port, will not deprive the seamen of wages at the expiration of the term for which they shipped.

3. SAME—SAME.

    If the seamen remain longer on board performing faithful service, they will be entitled to pay for their additional services upon the basis of *quantum meruit.*

4. SAME—SAME.

    A reasonable mode of determining that sum is to ascertain the wages mutually agreed upon between the parties during the continuance of their contract, and to adopt that rate for the additional services.

5. SAME—DESERTION.

    Leaving the vessel in a place of security, selected by the captain for winter quarters, in order to obtain wages which had been repeatedly refused them, does not constitute desertion, so as to deprive the seamen of the wages earned.

6. SAME—WAGES.

    Trivial depredation upon the ship's property does not of itself forfeit seamen's wages.

7. AMENDMENTS—COSTS.

    Amendments of mere form not going to the merits of the case, and not of such a character as to prejudice the respondent, will not entitle him to costs.

In Admiralty.    Libel for Wages.

Upon motion of the libellants' proctor to confirm the report of the admiralty commissioner under the forty-fourth rule in admiralty.

*Charles B. Love,* proctor for libellants for the motion.

*L. C. Vandegrift,* proctor for respondents in opposition to the confirmation of the report.

BRADFORD, D. J. The libellants were shipped on board said schooner at the port of Philadelphia, on the Delaware, thence "bound from said port to the Delaware breakwater, and waters tributary to the Delaware river and coast of Maryland and New Jersey, to be engaged in wrecking, and back to Philadelphia, for a term of six months," as set forth in the shipping articles produced in evidence. It appears from the evidence they were all foreigners, and but imperfectly acquainted with the English language, and could neither read nor write the same. It also further appears by the evidence of the shipping master, Wilson, and by the testimony of the respondent Lubker himself, that the articles were explained to the men by said Lubker and Wilson to be a contract to pay wages for the term of six months, for working on said vessel in the business in which she was engaged; that is, wrecking in and about the harbor of Lewes, at the entrance of Delaware bay.

It is in evidence that the vessel never did in fact return to Philadelphia, and that all these seamen performed their duty faithfully for more than a period of six months; and that, after making several unsuccessful demands for their wages, finally left her in winter quarters, and in a place of safety, selected by the master of the schooner.

The respondents, however, claim that no wages whatever are due under the shipping articles until the voyage for which they shipped is completed by the arrival of the vessel at the port of Philadelphia, after six months from the date of shipment of the crew; and, further, that they had forfeited their wages by misconduct in opening a box of the master and taking three bottles of beer without leave; and, further, by leaving the ship in a position of danger and peril without the permission of the master.

The authorities cited by the respondent no doubt establish the position of the necessity of the completion of the voyage for which the seaman is shipped, as a condition precedent for the payment of the full wages due, unless the seaman is unjustly discharged by the master during the *interim.* There *is no doubt of the applicability of this law to vessels carrying*

freight from port to port, but the peculiar maritime services of this vessel must be taken in consideration in determining the law in reference to the completion of a voyage before wages are due.

The schooner Edwin Post was what is termed a wrecking vessel, whose business was giving assistance to vessels in distress, and the performance of general salvage services, etc. She could in no proper sense be said to be making a voyage from port to port, for the scene of her operations was altogether local, her headquarters being the breakwater, at the entrance of the Delaware bay. She was not engaged, as a usual thing, in carrying freight from port to port.

The court thinks the fair and reasonable construction of the shipping articles is that they constitute an agreement to give employment for the period of six months, at the rate respectively agreed upon between the master and seaman; and, while the master had the right to expect their services for that period of time, they were also entitled, in case of accident or improper discharge by the master, to have a *pro rata* share of their wages earned by them during their actual stay on the vessel and in his employ. There is no dispute about the time they were in the vessel, and that the full six months' wages were earned. But it is contended that, as there was in the shipping articles a provision, or rather an intimation, that the vessel was to come "back to Philadelphia" after the work was done, that her arrival at Philadelphia was a condition precedent to the right to have wages paid.

The court cannot take this view of the case. As before said, the getting back to Philadelphia was no essential portion of the work for which these men were employed. Its mention was a mere incident, and we think it was not intended that fact should determine the earning of wages in whole or in part. Any other construction would have put it in the power of the master to have kept these seamen for an indefinite length of time, and postponed the payment of their wages to the actual arrival of the vessel at the port of Phila-

delphia—a construction which would be oppressive upon the rights of the seamen.

It appears from the evidence that the seamen served on board the said schooner not only during the period of six months, but also for several months additional, which has been computed and included in the report of the admiralty commissioner in this case. The court is of opinion that they are entitled to this additional amount upon the basis of *quantum meruit;* and there is no more reasonable method of determining the amount due than by reference to the sum agreed by the master to be paid them for similar services immediately preceding, and which were satisfactory to both parties. These amounts will be accordingly added to the six months' wages earned. The court does not consider that the crew forfeited any part of their wages by the abstraction of a few bottles of beer on a very hot day, for which they offered payment to the captain. It no doubt was an offence against strict discipline on board ship, but was not of such a serious character as to forfeit wages, and particularly as the master exonerated these seamen from any other depredations on the ship's property during their stay on board. The court cannot accede to the proposition that those seamen forfeited their wages by desertion of the vessel in leaving her without assistance in a position of danger. The evidence in the case does not sustain such a conclusion; on the contrary, it shows distinctly that the libellants left her in a place of security for winter quarters selected by the master himself. They left her only for the purpose of obtaining their wages, which were long past due, and under such circumstances as the court thinks justified them in leaving without incurring the charge of desertion.

The report of the commissioner, fixing the amount of wages due each respective libellant, is hereby approved and adopted. Let a decree be entered accordingly. The costs in this case to be taxed are to be paid by the respondent. The court does not think that the amendments were of such a character as to prejudice the respondent to such an extent as to entitle him to costs. Where one party is so misled by

the pleadings of another as to take a course of action which otherwise he would not have taken, and the first party sees fit to amend, thus throwing the other party upon a new line of defence, then costs ought to be imposed upon the party amending; for *non constat*, if the original pleading had been the same as the amended one, that the defendant might have defended at all, or taken a less troublesome and expensive line of defence. We do not see that the respondent has been damnified by the amendment to the libel to such an extent as to entitle him to costs. All the evidence shows that there was no wrongful presentation of the case as regards its substantial merits in the libel as filed originally.

Leaving out of view minor questions of date and form, to which extent the amendments to the libel only went, nevertheless the master refused to pay the wages of his seamen, which he admitted had been earned by their faithful and continuous labor for a period of over six months, if not forfeited for other causes. Thus it will be seen that the objection to amending the libel is not one going to the merits of the action. He is not entitled to have costs by reason of the amendment, and they must be denied.